THIS case came up on a case stated from the Supreme Court in and for Sussex County, and was heard at this term before all the judges in the Court of Errors and Appeals, with the exception of Houston, J., who declined to sit because he had been a stockholder in, and the president of the railroad company when the acts of assembly referred to in it were enacted, and the mortgage of the company to the State was executed under them.
The case stated was in substance as follows: That the General Assembly passed an act on March 14th, 1865, for the purpose of aiding the said railroad company to complete their railroad, from Milford to Lewes, by a loan of four hundred thousand dollars in the bonds of the State with coupons annexed for the semi-annual payment of the interest thereon at six per cent., payable on or before the 1st day of January, A. D. 1890, to be secured by a first mortgage and lien by the company on all the railroad then built and all the lands then owned by the company, and on all the railroad thereafter to be built by it, and on all the lands thereafter to be owned by it, subject to the following further terms and conditions substituted and provided in an amendment to the act passed on the 13th day of February following, that as soon as the directors of the company should have procured bona fide
subscriptions to the capital stock of it to the amount of fifty thousand dollars in addition to the capital stock already subscribed at the date of the passage of the said original act, and satisfied the State treasurer by their oath or affirmation that one-half of that additional subscription had been collected and paid in money to the company or in materials or in work and labor required in the construction and completion of the railroad, it should be his duty to cause the bonds of the State to be made to the amount of four hundred thousand dollars, in the denomination of one thousand dollars *Page 92 
each, payable on or before the 1st day of January, 1890, with semi-annual coupons annexed to them for the payment of the interest thereon at the rate of six per cent. per annum on the 1st day of January and the 1st day of July in every year until the principal should be paid, and to deliver to the company the said bonds of the State to the amount of one hundred and thirty-two thousand dollars; and whenever it should afterward appear to the satisfaction of the State treasurer as aforesaid that further bona fide additional subscriptions had been made to the capital stock of the company to the further amount of fifty thousand dollars, and that the one-half thereof, together with the balance or residue of the said additional subscription of fifty thousand dollars before mentioned and prescribed, had been collected and paid to the company in like manner as aforesaid, it should be his duty to deliver to the company the said bonds of the State to the further amount of forty-four thousand dollars; and whenever it should afterward appear to the satisfaction of the State treasurer as aforesaid that further bona fide
additional subscriptions had been made to the capital stock of the company to the further amount of fifty thousand dollars, and that the whole amount of the same, together with the balance or residue of the said additional subscription of fifty thousand dollars secondly above mentioned and prescribed, had been collected and paid to the company in like manner as aforesaid, it should be his duty to deliver to the company the said bonds of the State to the further amount of eighty-eight thousand dollars; and whenever it should afterward appear to his satisfaction as aforesaid that further bona fide
subscriptions had been made to the capital stock of the company to the further amount of fifty thousand dollars, and that the whole amount thereof had been collected and paid to the company in like manner as aforesaid, it should be his duty to deliver to the company the said bonds of the State to the further and like amount of eighty-eight thousand dollars — and making in the aggregate the amount of three hundred and fifty-two thousand dollars in the said bonds of the State so to be delivered by him to the company. But he was directed in other provisions of the said original act to retain the balance of them, amounting *Page 93 
to forty-eight thousand dollars, and was further authorized and directed to sell them at such time or times and in such manner as he might deem proper, and to apply the proceeds of the sale of them to the payment of the interest on the mortgage of the company to the State for two years from the date of it, and which was to bear interest at the rate of six per cent. per annum from its date, and to be payable on or before the 1st day of January, 1890.
Afterward in the month of December, 1866, having obtained fifty thousand dollars in additional bona fide subscriptions to the capital stock of the company, and collected one-half of the amount thereof as required by the said act and satisfied the State treasurer of the same as therein provided for, he caused the State bonds to be prepared and printed in all respects as prescribed and directed in the said acts of assembly, the first interest coupon annexed to each one of them as so prepared and printed being made payable July 1st, 1867. The act further required that in consideration of the said bonds of the State so to be delivered to the company as aforesaid, and of the amount of the forty-eight thousand dollars of them to be retained by the State treasurer and applied for the benefit of the company as aforesaid, the directors of it should prepare, execute, and acknowledge the said mortgage of the company to the State for four hundred thousand dollars, and deliver the same to the State treasurer at the time of the delivery by him to the company of the said bonds of the State to the said amount of one hundred and thirty-two thousand dollars hereinbefore first mentioned as aforesaid, and that he should cause the said mortgage to be duly recorded as provided for in the said act. That afterward, on the 8th day of May, 1867, the said mortgage was duly executed, acknowledged and delivered by the directors of the company to the State treasurer, and it was accepted by him and was caused to be duly recorded by him; but he thereupon refused to deliver to them or the company the said first installment of the bonds of the State to the amount of one hundred and thirty-two thousand dollars, and would only deliver them to the amount of one hundred and twenty-eight thousand dollars, and retained the balance of them, consisting of numbers 129, 130, *Page 94 
131, and 132, for one thousand dollars each, and dated on the 8th day of May, 1867, even date with the mortgage of the company, on the ground that the first interest coupon annexed to each of the bonds would carry interest from January 1st, 1867, and the mortgage only from the 8th of May in that year, and the interest on the mortgage would be about four thousand dollars less than the interest on the bonds, as he estimated it. He insisted on retaining the four bonds mentioned until the next session of the General Assembly, subject to its order and direction as to the disposition of them when it should again meet.
It was not until the 26th day of October, 1868, that the company became entitled to the second allotment or installment of the said State bonds in accordance with the provisions of the said acts, when application was duly made on its behalf to the State treasurer for the delivery of them to the amount of forty-four thousand dollars with all the interest coupons annexed to each of them and as they had been prepared and printed for delivery to the company; yet, notwithstanding the State treasurer was satisfied by the oath of the directors that the company had complied with all the conditions prescribed in the said acts for that purpose, he refused to deliver them to the company with all the said interest coupons so annexed to them as aforesaid, but insisted on severing from each one of them and retaining, and did thereupon sever from each one of them and retain in his possession, the four semi-annual interest coupons then annexed to each one of them, payable respectively on July 1st, 1867, on January 1st and July 1st, 1868, and on January 1st, 1869; but he consented to deliver and did then deliver the said bonds to the amount of forty-four thousand dollars with all the other and remaining semi-annual interest coupons annexed to each one of them to the company.
On the 6th day of April, 1869, the General Assembly enacted a supplement to the act before first mentioned directing the State treasurer to deliver to the company the said four State bonds for one thousand dollars each, with all the semi-annual coupons remaining annexed to them for the payment of interest, which had been retained by him as hereinbefore stated, and also directing him to deliver to the company all the semi-annual coupons *Page 95 
for the payment of interest on the said forty-four State bonds for one thousand dollars each which were severed therefrom and retained by him when the said forty-four bonds were delivered to it as hereinbefore stated; and both of which orders were thereupon duly executed by him. The same supplement also provides that no interest shall be required to be paid to the State on the said mortgage of the company until the interest and coupons on the said bonds of the State, which shall have been paid by the State, shall amount to forty-eight thousand dollars, that is to say, to the amount of the said bonds directed to be retained by the State treasurer in the said act to which this is a supplement.
On the 14th day of September, 1869, and upon a full compliance by the directors of the said company with the terms and conditions prescribed in the said acts for that purpose, the said third allotment or installment of eighty-eight of the said State bonds for one thousand dollars each, amounting to eighty-eight thousand dollars, was delivered by the State treasurer to the company; and on the 27th day of October following under like circumstances the fourth and last allotment or installment of eighty-eight of said State bonds for one thousand dollars each, amounting to eighty-eight thousand dollars, was delivered by the State treasurer to the company; but he claimed the right and authority to sever, and did sever from each of the said bonds included in the last two allotments of them above mentioned, all the semi-annual coupons annexed thereto for the payment of interest on them from January 1st, 1867, to July 1st, 1869, and retained them in his possession against the claim and demand of the company.
All the foregoing facts occurred during the term of the late incumbent in the office of State treasurer; he had no occasion, however, to sell, and never did sell any of the forty-eight State bonds to meet the interest as it accrued on the loan, but having a surplus of revenue in the treasury he had paid it out of the general funds of the State, and with the sanction of the General Assembly has since surrendered them just as he received them to a joint committee of the two houses by whom they have been cancelled on behalf of the State. *Page 96 
That his successor in office, the defendant in this action, as State treasurer, on or after the said 1st day of January, 1871, rendered an account to the plaintiff, the company, of interest due the State to that date, which was substantially as follows:

132 State bonds delivered July 9th, 1867.
 44 " " " Oct. 26th, 1868.
___
176
 24 of the 48 reserved.
___
$200,000. Interest from January 1st, 1867, to
 January 1st, 1871, ..................... $48,000
 88 State bonds delivered Sept. 14th, 1869.
 88 " " " Oct 27th, 1869.
 ___
 176
 24 of the 48 reserved.
 ___
$200,000. Interest from July 1st, 1869, to
 January 1st, 1871, .................... $18,000
 _______
 $66,000
 Cr. by 48 bonds reserved, ............. 48,000
 _______
 Bal. claimed January 1st, 1871, ....... $18,000

The said balance of eighteen thousand dollars was thereupon demanded of the plaintiff by the defendant and a foreclosure of the mortgage was threatened by him if the same should be refused, but the plaintiff then insisted that upon a true and correct construction of the acts of assembly as before stated and the facts hereinbefore fully set forth, the sum due for interest over and above the said sum of forty-eight thousand dollars was not more than the sum of ten thousand and eighty dollars, which last sum the plaintiff was willing to pay. Nevertheless, the plaintiff Was required to pay, and did pay to the defendant on the 17th day of March, 1871, the sum of eighteen thousand dollars, at the same time protesting that only a portion thereof was due, and reserving the right to sue for and recover so much *Page 97 
thereof as might not be legally and truly due to the State, and thereupon took from the defendant a written receipt for the payment of the same acknowledging that it had been so paid under protest with the right reserved to the plaintiff to sue for and recover so much thereof as might not be legally and justly due as aforesaid. And this suit is instituted for that purpose.
If the court shall be of opinion upon the facts stated that the whole or any portion of the said sum of eighteen thousand dollars so demanded and paid as aforesaid, was not lawfully due and properly paid under a correct construction of the acts of assembly before recited, then judgment shall be entered for the plaintiff for such sum as the court shall consider was illegally and wrongfully demanded and improperly paid, with interest from the date of such payment; otherwise judgment shall be entered for the defendant, either party to have the right to remove the case on a writ of error to the Court of Errors and Appeals. Dated and signed by the respective counsel April 15th, 1874.
Bates (Moore with him), for the plaintiff: The question for the court to consider in the case is a simple one, and that is what was the nature of this loan, as it was intended from the first, by the legislature to the company? The original act of February 14th, 1865, contemplated that the whole amount of the State bonds to be issued to the company under the provisions of it, three hundred and fifty-two thousand dollars, would be delivered to it, although the act did not require it, within two years after the execution and delivery of the mortgage of the company to the State for four hundred thousand dollars to secure the repayment of the loan to that amount with interest upon it from and after two years from its execution and delivery; and it was evidently designed to be a loan at simple interest, and not as a discount on its own paper or bonds loaned to the company. We therefore confidently contend that not only the original act, but all the subsequent acts and legislation referred to in the case, clearly and conclusively show that the forty-eight bonds, amounting to forty-eight thousand dollars, which the State treasurer was directed to retain out of the four hundred *Page 98 
ordered to be prepared, and to dispose of for the purpose prescribed in the original act, were designed as a fund reserved and set aside simply to meet the interest on the bonds which in the meantime should be emitted, as the same should become payable from time to time during the first two years after the mortgage had been delivered, and that it was not conceived or intended in any sense or respect to operate as a profit, a premium, or a discount on such a loan for that amount to the company without interest for two years. But whilst it was doubtless intended for the case and relief of the company for the period limited, the State certainly lost nothing by requiring the interest for those two years to be paid in advance.
In the conclusion of the argument they presented on behalf of the plaintiff the following statement of the amount of interest which was due the State on January 1st, 1871, in lieu of that made by them in the case stated, and which they now desired to correct, and which shows the true amount of the alleged overpayment:
Bonds received to be applied to the payment of
 interest, ................................. $48,000
Interest on $176,000 from January 1st, 1867,
 to July 1st, 1869, ....................... $26,400
Interest on $352,000 from July 1st, 1869,
 to July 1st, 1870, ....................... 21,120 $47,520
 _______
Balance of $48,000 remaining to the credit of the
 company, ................................. $480
Interest for six months on $400,000 from July 1st,
 1870, to January 1st, 1871, .............. 12,000
 _______
Deducting the above balance of $480, amount of
 interest due January 1st, 1871, was, ..... $11,520
Amount of interest claimed and paid to January 1st, _______
 1871, was, 18,000
Amount of overpayment on March 17th, 1871, ... $6,480
and for that amount with interest on it from that date
the suit is brought.
 *Page 99 
 Penington, Attorney-General, for the defendant: The passage of the act of assembly referred to and the acceptance of it by the company constituted a contract between the State and the company for a large loan of money by the State to a corporation created by it, and if it was vague and uncertain in the terms and provisions of it on the point in question, as it was in his opinion, it should, in accordance with a well-settled rule of construction in like cases, be construed favorably for the State and against the other party, and the general reason for the rule would readily occur to the mind of the court without his suggesting it. It certainly required no doubtful or disputed construction of it in favor of the plaintiff to constitute it a remarkable demonstration of the State's liberality and even generosity to the company. And after all it has received from its favor and its bounty, it should not now ask for another dollar from its treasury to which it is not clearly and unquestionably entitled under the law. It was by a wise and sound exercise of his discretion the late State Treasurer paid the forty-eight thousand dollars of interest, less a very small amount of it, out of the current revenue of the State without disposing of one of the forty-eight State bonds directed to be retained and reserved for that purpose, for he thus prevented any compounding of interest on that portion of the loan which would have occurred had they been sold with their coupons annexed, to meet the payment of the first forty-eight thousand dollars of interest from which the mortgage of the company was exempted for the first two years; and the fact that it was so paid out of the current revenue of the State, strengthened rather than weakened the just and legal demand of the State to have every dollar of it repaid into the treasury by the company. It was manifest that the design and provision of the statute has been either literally performed or substantially complied with by the company, and there was therefore some room left for the exercise of a sound discretion on the part of the court in administering what would seem to be but fairness and justice under the circumstances between the parties in the case.
By the Court: At a subsequent day during the term the following *Page 100 
entry was directed by the court to be made on the record of the case. It is therefore considered by the court that upon the true construction of the acts of assembly set forth in the case stated, the amount of interest which was due from the plaintiff to the State upon the mortgage recited in the case stated on the 1st day of January, A. D. 1871, was the sum of eleven thousand five hundred and twenty dollars, and that the payment made to the defendant under protest on the 17th day of March, A. D. 1871, of eighteen thousand dollars, was an overpayment of six thousand four hundred and eighty dollars, which the plaintiff is entitled to recover in this action with interest thereon from said 17th day of March, A. D. 1871, with directions that the same should be certified to the court below. *Page 101